137 Nev., Advance Opinion 13

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LISA GUZMAN, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, Appellant, vs. ROBERT L. JOHNSON; MIGUEL PENELLA; JOHN HSU; ARLENE MANOS; H. VAN SINCLAIR; ANDOR M. LASZLO; SCOTT ROYSTER; DAYTON JUDD; JOHN ZIEGELMAN; AMC NETWORK, INC.; DIGITAL ENTERTAINMENT HOLDINGS, LLC; AND RIVER MERGER SUB, INC., Respondents. | No. 79818 **FILED** MAR 25 2021 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a final judgment dismissing a shareholder complaint in a business matter. Eighth Judicial District Court, Clark County; Elizabeth Gonzalez, Judge.

*Affirmed.*

Monteverde & Associates PC and Juan E. Monteverde, New York, New York; Albright Stoddard Warnick & Albright and G. Mark Albright and Jorge L. Alvarez, Las Vegas; Kahn Swick & Foti, LLC, and Michael J. Palestina, New Orleans, Louisiana,
for Appellant.

Brownstein Hyatt Farber Schreck, LLP, and Kirk B. Lenhard and Maximilien D. Fetaz, Las Vegas; Sullivan & Cromwell LLP and John L. Hardiman and Charles E. Moulins, New York, New York,
for Respondents.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, SILVER, J.:

A shareholder who sues a corporate director individually for breach of fiduciary duty must, under NRS 78.138(7), rebut the business judgment rule and demonstrate that the alleged breach involved intentional misconduct, fraud, or a knowing violation of the law. In the instant case, appellant Lisa Guzman filed a shareholder complaint against the individual directors of a corporation and its controlling stockholder, alleging breach of fiduciary duty and seeking damages from a merger. The district court dismissed Guzman's complaint for failure to state a claim upon which relief can be granted. Guzman now appeals, contending that she rebutted the business judgment rule by alleging in her complaint that the individual directors were interested parties in the transaction, citing *Foster v. Arata*, 74 Nev. 143, 325 P.2d 759 (1958).

In resolving this contention, we consider whether NRS 78.138(7) supplants the "inherent fairness" standard adopted in *Foster*. Under that standard, the mere allegation that a director was an interested party in the transaction rebuts the business judgment rule as a matter of law and shifts the burden to the director to prove the inherent fairness of the transaction. We conclude that NRS 78.138(7) precludes such a standard.

As we recently explained in *Chur v. Eighth Judicial District Court*, NRS 78.138(7) supplies "the *sole avenue* to hold directors and officers individually liable for damages arising from official conduct." 136 Nev. 68, 72-73, 458 P.3d 336, 340 (2020) (emphasis added). We now clarify that NRS

SUPREME COURT
OF
NEVADA

(O) 1947A

2

78.138 and *Chur* control, foreclosing the inherent fairness standard that previously allowed a shareholder to automatically rebut the business judgment rule and shift the burden of proof to the director. Further, because Guzman failed to rebut the business judgment rule and allege particularized facts demonstrating the requisite breach of fiduciary duty, we affirm the district court's dismissal of her complaint.

## FACTS AND PROCEDURAL HISTORY

In August 2016, RLJ Entertainment, Inc. (RLJE) entered into an investment agreement with respondent Digital Entertainment Holdings, LLC, a subsidiary of respondent AMC Networks, Inc. Under the investment agreement, AMC, through Digital, loaned RLJE $65 million, and RLJE gave AMC the option of owning at least 50.1 percent of RLJE's outstanding common stock, enabling AMC to become RLJE's controlling stockholder. The investment agreement prohibited RLJE from considering any other acquisition proposal (the "No-Shop Provision"). The agreement also gave AMC the right to designate two directors to RLJE's board and, upon the exercise of the warrants in full, AMC had the right to designate a majority of RLJE's board. A majority of the shareholders voted in favor of the investment agreement.

In February 2018, AMC sent RLJE a letter offering to purchase the outstanding shares of common stock for $4.25 per share. In that letter, AMC stated that it would "not sell [its] stake in RLJE or be part of any other process." AMC also urged the board to form an independent special committee to review the proposal, with help from the special committee's own legal and financial advisors. In response to AMC's proposal, RLJE's board formed a special committee consisting of two of its directors, respondent Andor M. Laszlo and respondent Scott Royster (the Special

Committee).[1] The Special Committee asked RLJE's board to provide it with authority to consider and solicit offers from third parties. AMC expressed that it would not support any other transaction and that any attempt at soliciting other offers would be futile considering AMC's majority ownership and the No-Shop Provision in the investment agreement. RLJE's board thereafter denied the Special Committee's request.

Over roughly 50 days, the Special Committee negotiated the merger. The Special Committee rejected AMC's first proposal of $4.25 per share as insufficient. AMC increased its offer to $4.92 per share, but the Special Committee rejected that as well, concluding it still materially undervalued RLJE's common stock. The Special Committee told AMC that it would be unlikely to consider a price of less than $6.00 per share. AMC revised its offer to $5.95 per share, but the Special Committee held to a minimum negotiating price of $6.00 per share. AMC agreed to increase its offer to $6.00. The Special Committee countered that it would be prepared to accept a price of $6.25 per share, and AMC agreed.

As of October 3, 2018, AMC beneficially owned approximately 51.9 percent of RLJE's outstanding stock and had notified RLJE it would vote all of its shares in favor of the merger. The merger proxy statement, mailed to stockholders on or about October 5, 2018, disclosed a contribution agreement between AMC and the chair of RLJE's board of directors, respondent Robert L. Johnson, and stated that the Special Committee, and its financial advisor, determined the merger was fair and in the best interests of RLJE and the RLJE stockholders. The merger was approved at an October 31 stockholder meeting. AMC thereby acquired RLJE.

---

[1]Laszlo and Royster contracted to receive up to $100,000 in compensation for their service on the Special Committee.

One day before the shareholder vote approved the merger, Guzman filed a class action against RLJE directors Johnson, Miguel Panella, John Hsu, Arlene Manos, H. Van Sinclair, Laszlo, Royster, Dayton Judd, and John Ziegelman (collectively, when possible, the individual directors), AMC, and AMC's subsidiaries Digital and River Merger Sub, Inc.,[2] alleging that they breached their fiduciary duties to her and the other minority stockholders in connection with the transaction. Guzman argued that because AMC owned a majority of RLJE's stock, AMC owed a fiduciary duty to ensure the sale was fair and RLJE could not realistically contest the sale. Guzman further claimed that AMC secured RLJE chair Johnson's support before making its first share-price offer, asserting that he had already negotiated the terms of his continuing employment with, and equity in, the post-merger company. Guzman acknowledged the two members of the Special Committee, Laszlo and Royster, "had no commercial, financial or business affiliations or relationships with any of AMC, [ ] Johnson or any of their respective affiliates." But Guzman argued the Special Committee had no power to consider or solicit offers from third parties because AMC told the Special Committee it would not consider any such offers and that exploring alternatives to the merger was futile.

The individual directors and AMC moved to dismiss under NRCP 12(b)(5), arguing that Guzman failed to rebut the business judgment rule under NRS 78.138. Guzman countered that she sufficiently pleaded facts to rebut the business judgment rule by arguing the fiduciaries here were interested parties to the transaction, citing *Foster v. Arata*, 74 Nev.

---

[2]We note that although Guzman also named Digital and River in her complaint, she focuses her arguments on the individual directors and AMC. Accordingly, we do not discuss Digital and River further.

143, 325 P.2d 759 (1958), and *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 640 n.61, 173 P.3d 1171, 1184 n.61 (2006), *disavowed on other grounds by Chur*, 136 Nev. at 72, 458 P.3d at 340. She argued that under *Foster* and *Shoen* the burden shifted to the individual directors to show they acted in good faith when negotiating and approving the merger. Guzman additionally argued that NRS 78.138 did not protect AMC as a controlling stockholder.

During a hearing on the motion, the district court asked Guzman what allegations in her complaint supported her claim that the Special Committee was not disinterested in the transaction. Guzman responded that "they were at risk of being ousted and that's not a good footing." Guzman then conceded, however, that she had no specific allegations implicating the Special Committee. The district court concluded that Guzman failed to state adequate facts in her complaint showing the Special Committee was not disinterested. Therefore, the court determined that the business judgment rule applied because RLJE had given the Special Committee full authority to determine whether to merge with AMC. The district court dismissed the action against all of the individual directors as well as AMC, finding that while "AMC is not a board member . . . [Guzman is] attacking the transaction." The district court gave leave to amend, but Guzman instead requested entry of judgment and now appeals.

## DISCUSSION

Guzman contends that the district court erred by applying NRS 78.138 to the individual directors and AMC, and that pursuant to *Foster*, she rebutted the business judgment rule as a matter of law and shifted the burden of proof to the individual directors by alleging that they were

"interested fiduciaries" in the merger. Guzman argues in the alternative that she presented sufficient allegations against the individual directors and AMC to withstand the motion to dismiss.

A breach of a fiduciary duty gives rise to liability for damages resulting from the breach. *See Stalk v. Mushkin*, 125 Nev. 21, 28, 199 P.3d 838, 843 (2009). In *Chur*, we explained that a litigant who sues directors or officers of a corporation individually for breach of fiduciary duty must satisfy both requirements of NRS 78.138(7) (2017), which provides the sole method for holding individual directors liable for corporate decisions. 136 Nev. at 72-73, 458 P.3d at 340-41.[3] That statute, enacted in 1991,[4] requires the claimant to (1) rebut the business judgment rule and (2) demonstrate a breach of fiduciary duty involving intentional misconduct, fraud, or another knowing violation of the law. NRS 78.138(7).

Here, Guzman filed suit against the individual directors and AMC for breach of fiduciary duty regarding the merger. We first address whether Guzman met the requirements of NRS 78.138(7) as to her claims against the individual directors before turning to Guzman's claim against AMC.

*Standard of review*

We review de novo an order granting an NRCP 12(b)(5) motion to dismiss. *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008). A decision to dismiss a complaint under NRCP 12(b)(5) is rigorously reviewed on appeal, with the facts alleged in the

---

[3]We draw from the 2017 version of the statute unless otherwise noted. *See* 2017 Nev. Stat., ch. 559, § 4, at 3998-99.

[4]*See* 1991 Nev. Stat., ch. 442, §§ 1-4, at 1184-85.

complaint presumed true and all inferences drawn in favor of the complainant. *Id.* Dismissing a complaint is appropriate "only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Id.* at 228, 181 P.3d at 672. Because Guzman alleged fraud in her breach of fiduciary duty claim, however, she "must satisfy the heightened pleading requirement of NRCP 9(b)." *See In re Amerco Derivative Litig.*, 127 Nev. 196, 223, 252 P.3d 681, 700 (2011); *see also* NRCP 9(b) (providing that allegations of fraud must be pleaded with particularity).

We also review legal conclusions, including questions of statutory construction, de novo. *Id.*; *see Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014). We do not look beyond a statute's language if its plain meaning is clear on its face, *see Zohar*, 130 Nev. at 737, 334 P.3d at 405, and we will give effect to its plain meaning, *see Chur*, 136 Nev. at 72, 458 P.3d at 340.

*The inherent fairness standard is precluded by NRS 78.138*

As a threshold matter, Guzman argues that when a stockholder challenges an interested fiduciary's corporate dealings, the business judgment rule is rebutted as a matter of law and the burden shifts to the interested fiduciary to prove good faith and the inherent fairness of the challenged transaction. Guzman asserts this court adopted this "inherent fairness" standard in *Foster* and reaffirmed its application to NRS 78.138 in *Shoen*. Guzman contends that she therefore rebutted NRS 78.138's business judgment rule as a matter of law when she alleged the individual directors were interested fiduciaries as a result of their conduct during the merger. Thus, Guzman asserts that her allegations shifted the burden to the individual directors to prove the inherent fairness of the transaction.

The business judgment rule is codified, in relevant part, in NRS 78.138(3). *See Chur*, 136 Nev. at 71, 458 P.3d at 340.[5] That statute provides a presumption of good faith, stating that "directors and officers, in deciding upon matters of business, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation." NRS 78.138(3). Generally, the business judgment rule protects directors and officers from individual liability and limits judicial interference with corporate decisions when those decisions are made in good faith. *See Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 133 Nev. 369, 376, 399 P.3d 334, 342 (2017) (citing 18B Am. Jur. 2d *Corporations* § 1451 (2016)).

In arguing that she rebutted the business judgment rule, Guzman relies on the following language in *Foster*:

> A director is a fiduciary. * * * So is a dominant or controlling stockholder or group of stockholders. * * * Their powers are powers in trust. * * * Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged *the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness* from the viewpoint of the corporation and those interested therein.

74 Nev. at 155, 325 P.2d at 765 (quoting *Pepper v. Litton*, 308 U.S. 295, 306 (1939) (emphasis added)).

We have never expressly overruled *Foster*'s inherent fairness standard, and we cited it favorably in *Shoen*, where we noted in dicta that "when an interested fiduciary's transactions with the corporation are

---

[5]The statute's good-faith presumption was added in 1999. *See* 1999 Nev. Stat., ch. 357, § 67, at 1580.

challenged, the fiduciary must show good faith and the transaction's fairness." 122 Nev. at 640 n.61, 137 P.3d at 1184 n.61. However, NRS 78.138(7) plainly requires the plaintiff to *both* rebut the business judgment rule's presumption of good faith *and* show a breach of fiduciary duty involving intentional misconduct, fraud, or a knowing violation of the law. The statute's language is straightforward and must be given effect. *See Chur*, 136 Nev. at 72, 458 P.3d at 340; *Zohar*, 130 Nev. at 737, 334 P.3d at 405.

Our recent decision in *Chur* guides our analysis here.[6] There, the district court relied on dicta from *Shoen* to impose a gross negligence standard to claims for breach of fiduciary duty. *Chur*, 136 Nev. at 72, 458 P.3d at 340. We rejected the notion that *Shoen* provides a method of determining director or officer liability outside the plain language of NRS 78.138 and disavowed *Shoen* to the extent it suggested an alternate rule. *Id.* Importantly, we held that "NRS 78.138(7) provides the *sole avenue* to hold directors and officers individually liable for damages arising from official conduct." *Id.* at 72-73, 458 P.3d at 340 (emphasis added).

Applying the same rationale, we now conclude that the inherent fairness standard cannot be utilized to rebut the business judgment rule and shift the burden of proof to the individual directors. Such a standard would contravene the express provisions of NRS 78.138(7) and render meaningless the statute's requirement that the plaintiff must establish a breach involving intentional misconduct, fraud, or a knowing violation of law. By confusing and blurring the plaintiff's burden under NRS 78.138(7), adhering to the inherent fairness standard would also frustrate the purpose

---

[6]We note the parties did not have the benefit of *Chur* when they argued before the district court.

of NRS Chapter 78, which is "for the laws governing domestic corporations to be clear and comprehensible." NRS 78.012(1). While a plaintiff may rebut the business judgment rule's presumption of good faith by, for instance, showing that the fiduciary had a personal interest in the transaction, *see, e.g., Wynn Resorts*, 133 Nev. at 377, 399 P.3d at 343, we abrogate *Foster* and *Shoen* to the extent they conflict with the plain language of NRS 78.138(7) and our decision in *Chur*.[7]

Accordingly, we reject Guzman's contention that she rebutted the business judgment rule as a matter of law and shifted the burden to the individual directors to prove the inherent fairness of the transaction by merely alleging that they had an interest in the merger. We therefore next consider whether Guzman pleaded facts that, if true, would rebut the business judgment rule and show the requisite breach of fiduciary duty under NRS 78.138(7).

*Guzman's claims for breach of fiduciary duty against the individual directors fail under NRS 78.138(7)*

To state actionable claims against the individual directors, Guzman was required to allege facts that, if true, would show a breach of fiduciary duty and satisfy the two elements of NRS 78.138(7). A claim for

---

[7]In light of our decision, we do not consider Guzman's arguments regarding whether the individual directors proved inherent fairness. We also disagree with Guzman's contention that under the 2017 version of NRS 78.138, the fact-finder must decide, at trial, whether the plaintiff rebutted the business judgment rule. We have long held that dismissal is appropriate where, as here, the plaintiff fails to allege facts that state a claim upon which relief can be granted. *See Buzz Stew*, 124 Nev. at 227-28, 181 P.3d at 672. Further, in 2019, the Legislature removed the statutory language upon which Guzman relies after noting it was confusing and inaccurate. *See* Minutes of Assembly Committee on Judiciary on A.B. 207 at 10, 80th Leg. (Nev., Feb. 28, 2019).

breach of fiduciary duty customarily has three elements: (1) existence of a fiduciary duty, (2) breach of the duty, and (3) damages as a result of the breach. *See Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 812-13, 335 P.3d 190, 198 (2014) (providing the elements of aiding and abetting a breach of fiduciary duty); 121 Am. Jur. Trials 129 *Fiduciary Fraud* § 4 (2020) (providing the elements of fiduciary fraud).

Guzman filed breach of fiduciary duty claims against all of the individual directors, most of whom were not on the Special Committee. As to the individual directors who were not on the Special Committee and did not negotiate or approve the merger, Guzman failed to allege facts showing that those individual directors' interests actually affected the transaction. Guzman also failed to allege specific facts showing those directors engaged in any *intentional* misconduct, fraud, or knowing violation of the law in regard to the merger. Accordingly, the district court properly dismissed the complaint against those individual directors.

As to Special Committee members Laszlo and Royster, Guzman alleged that they acted to protect themselves from being ousted from RLJE's board, improperly revised RLJE's long-term revenue projections downward, and chose not to include a "majority of the minority provision" in the merger agreement. Guzman further averred that Royster's principal source of income stemmed from RLJE, that Laszlo and Royster had too few shares to be incentivized to negotiate a higher price, that they were enriched more by serving on the Special Committee than they would have been by negotiating a higher sale price, and that Laszlo and Royster lacked power to negotiate the sale. Yet, Laszlo and Royster agreed to be removed from the board of directors as part of the merger agreement, and Guzman acknowledged in her complaint that Laszlo and Royster negotiated with AMC for a higher

sales price. Critically, Guzman's allegations fail to support her claim that Laszlo and Royster were motivated by self-interest to undersell the stock.[8] Indeed, Guzman admitted to the district court that she based her interested-fiduciary argument solely on her speculation that Laszlo and Royster were at risk of being ousted from the board.

We therefore agree with the district court that Guzman's claims against Laszlo and Royster fall short of the demanding standard set forth in NRCP 9(b) and NRS 78.138(7). Specifically, Guzman's speculation that Laszlo and Royster were at risk of being ousted from the board, without providing particularized supporting facts, was insufficient to show they were motivated by self-interest so as to rebut the business judgment rule's presumption that they acted in good faith. Even assuming, for the sake of argument, that Guzman alleged facts rebutting the business judgment rule, her complaint does not state facts to show that the alleged breach by Laszlo and Royster involved intentional misconduct, fraud, or a knowing violation of the law. Accordingly, the district court properly dismissed the claims against Laszlo and Royster.

*The district court properly dismissed Guzman's claim against AMC*

Guzman additionally argues that the district court erred by dismissing her breach of fiduciary duty claim against AMC because, as the controlling stockholder, AMC breached its fiduciary duties to the minority stockholders. As we explained in *Cohen v. Mirage Resorts, Inc.*, "[a] dissenting shareholder who wishes to attack the validity of the merger or seek monetary damages based upon improper actions during the merger

---

[8]Guzman admits in her complaint that when the merger was announced in July 2018, RLJE's common stock hit a 52-week high of $5.08 per share, which is lower than the ultimate sale price of $6.25 per share.

SUPREME COURT
OF
NEVADA

(O) 1947A

13

process *must allege wrongful conduct that goes to the approval of the merger.*" 119 Nev. 1, 13, 62 P.3d 720, 728 (2003) (emphasis added). We further explained that minority shareholders may challenge the merger process where it was procedurally deficient or approved based upon materially incorrect information. *Id.* at 11, 62 P.3d at 727. Pertinent here, a minority shareholder may allege that the merger was accomplished through the wrongdoing of majority shareholders "and attempt to hold those individuals liable for monetary damages under theories of breach of fiduciary duty or loyalty." *Id.* at 11, 62 P.3d at 727.

Fraud-based challenges to the validity of a merger usually encompass a lack of fair dealing or lack of fair price, or both. *Id.* Such claims may "involve allegations that majority shareholders breached their limited fiduciary duties to minority shareholders." *Id.* at 12, 62 P.3d at 727. More specifically, lack-of-fair-dealing claims against majority shareholders arise where the board fails to make an independent, informed decision to approve the merger or where the majority shareholders approve a merger at the minority's expense. *Id.* Lack-of-fair-price claims allege that "the price per share was deliberately undervalued" or the majority shareholders were negligent. *Id.* at 12, 62 P.3d at 728.

Having carefully reviewed the allegations against AMC in Guzman's complaint, we agree that dismissal was proper. Critically, Guzman failed to allege particularized facts to demonstrate a lack of fair dealing or lack of fair price.[9] Guzman repeatedly points out that AMC was

---

[9]Guzman superficially argues on appeal that, outside the context of NRS 78.138, *Foster* required AMC to prove the inherent fairness of the merger. We decline to reach this argument because Guzman failed to allege sufficient facts to withstand the motion to dismiss. Moreover, Guzman fails

SUPREME COURT
OF
NEVADA

(O) 1947A

14

the majority shareholder, would not allow RLJE to receive offers from other buyers, and owned the majority of RLJE's debt. Guzman argues that the mere existence of these facts demonstrates a breach of fiduciary duty. However, these facts go to AMC's contractual rights rising from the investment agreement, which RLJE's shareholders approved well before the proposed merger. Significantly, Guzman fails to show how AMC used these contractual legal rights to force a merger or, more importantly, how AMC improperly influenced the decision to the minority shareholders' detriment. This is especially apparent considering that AMC recused itself from the decision-making process, the Special Committee had authority to evaluate and decline AMC's proposal and negotiate the price, and the final stock price of the sale was substantially above AMC's initial offer and was higher than the 52-week high stock price.

Guzman's attempt to ascribe a nefarious aura to AMC's agreement with Johnson also falls short of alleging particularized facts. The agreement transferred Johnson's interest in RLJE to an interest in the post-merger company and guaranteed Johnson employment in the post-merger company. However, Johnson did not have a majority interest in RLJE, was not on the Special Committee, and had no part in deciding whether to proceed with the merger with AMC. Therefore, Guzman failed to allege particularized facts demonstrating that AMC acted fraudulently

---

to cogently argue the inherent fairness standard in relation to her claim against AMC. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (this court need not consider arguments that are not adequately briefed, not supported by relevant authority, and not cogently presented).

or unlawfully.[10]   Accordingly, we conclude the district court properly dismissed the claim against AMC.[11]

## CONCLUSION

We reiterate that a shareholder seeking damages against individual directors and officers must proceed under NRS 78.138(7). Thus, we abrogate *Foster v. Arata*, 74 Nev. 143, 325 P.2d 759 (1958), and *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 640 n.61, 137 P.3d 1171, 1184 n.61 (2006), to the extent those cases adopted a standard that conflicts with NRS 78.138(7) and *Chur v. Eighth Judicial District Court*, 136 Nev. 68, 458 P.3d

---

[10]While the dissent contends that the complaint's allegations were sufficient as to AMC and Johnson under NRCP 12(b)(5) and the inherent fairness standard, we reiterate that fraud requires particularized allegations of fact, NRCP 9(b), and that the inherent fairness standard does not prevent the district court from first determining whether a complaint states a claim. Moreover, we note that Guzman's allegations against AMC and Johnson comprise fewer than two pages in an almost 60-page complaint. And here, where Guzman did not provide additional evidence, the district court constrained its focus to the four corners of the complaint. *Cf. Baxter v. Dignity Health*, 131 Nev. 759, 764, 357 P.3d 927, 930 (2015) (explaining "courts primarily focus on the allegations in the complaint" but may consider matters incorporated by reference or integral to the claim on a motion to dismiss when a complaint includes exhibits).

[11]The district court stated that it dismissed the claim against AMC because Guzman's allegations focused on the merger. To the extent the district court's reasoning was erroneous, we affirm because the district court reached the correct result. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) ("This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason.").

336 (2020). Further, we conclude that the district court did not err by dismissing Guzman's claims. Accordingly, we affirm the district court.

_____, J.
Silver

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A

17

PICKERING, J., concurring in part and dissenting in part:

This is an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief can be granted. Although the majority relies on NRCP 9(b), the respondents brought the motion to dismiss under NRCP 12(b)(5) and, neither in district court nor on appeal, cited or sought review under the particularized pleading standards of NRCP 9(b).[1] The plaintiff-friendly standard that *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 181 P.3d 670 (2008), establishes for NRCP 12(b)(5) motions thus controls. This standard requires that the court accept "all factual allegations in [the] complaint as true [and] draw all inferences in [Guzman's] favor." *Id.* at 228, 181 P.3d at 672. We may affirm the dismissal order "only if it appears beyond a doubt that [Guzman] could prove no set of facts, which, if true, would entitle [her] to relief." *Id.*

Generous though these standards are, I agree with my colleagues in affirming the dismissal of Guzman's claims against RLJE's individual directors (except Johnson). However, I would affirm the individual directors' dismissal based *solely* on the failure of the complaint to include allegations sufficient to overcome exculpatory provisions in NRS 78.138(7). This statute provides, in relevant part, that the director of a Nevada corporation *"is not individually liable* to the corporation or its stockholders . . . *for any damages as a result of any act or failure to act in his or her capacity as a director . . . unless . . . [i]t is proven that* (1) [t]he director's . . . act or failure to act constituted a breach of his or her fiduciary duties as a director . . . **and** (2) *[s]uch breach involved intentional*

---

[1] While NRCP 9(b) requires particularity in alleging fraud or mistake, it provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

SUPREME COURT
OF
NEVADA

(O) 1947A

*misconduct, fraud or a knowing violation of law.*" (emphases added). The merger is a fait accompli, so at this point Guzman's complaint as against the RLJE directors only seeks damages from them. Yet, similar to *Chur v. Eighth Judicial District Court*, 136 Nev. 68, 458 P.3d 336 (2020), the complaint in this case focused on the defendant directors' duty and breach and did not allege, even generally, the "intentional misconduct, fraud or . . . knowing violation of law" that NRS 78.138(7) requires to hold directors of a Nevada corporation individually liable for damages.

The same analysis does not apply to the controlling shareholder, AMC, or Robert Johnson, RLJE's founder, board chair, and substantial stockholder, who allegedly negotiated his post-merger equity position with AMC before AMC delivered its cash-out merger proposal to RLJE. A majority shareholder owes minority shareholders fiduciary duties distinct from the fiduciary duties directors owe. *See Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 11-12, 62 P.3d 720, 727-28 (2003); *Foster v. Arata*, 74 Nev. 143, 155, 325 P.2d 759, 765 (1958). And, while NRS 78.138(7) addresses the business judgment rule as applied to a corporation acting through its directors and absolves them of liability for damages for breaches of fiduciary duty not involving "intentional misconduct, fraud, or . . . knowing violation of law," NRS 78.138 says nothing about the duties a majority shareholder owes the minority shareholders. Though superseded as to directors by NRS 78.138—and perhaps due for refinement as to majority shareholders—*Foster v. Arata* states the general rule correctly: A majority shareholder is a fiduciary whose "dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the . . . [majority] stockholder not only to prove the good faith of the

transaction but also to show its inherent fairness." 74 Nev. at 155, 325 P.2d at 765 (quoting *Pepper v. Litton*, 308 U.S. 295, 306 (1939)); *see also Kahn v. M&F Worldwide Corp.*, 88 A.3d 635, 644 (Del. 2014) (establishing the conditions required for a controller buyout to receive business-judgment rather than an entire-fairness review—including approval by the uncoerced, informed vote of a majority of the minority stockholders—a condition neither met nor argued to have been met here), *overruled on other grounds by Flood v. Synutra Int'l, Inc.*, 195 A.3d 754 (Del. 2018).

   *Cohen v. Mirage Resorts, Inc.* adds detail to the fiduciary duty *Foster* imposes on majority shareholders in the merger context. As *Cohen* notes, minority shareholder claims against a controlling shareholder commonly allege "(1) lack of fair dealing or (2) lack of fair price." *Cohen*, 119 Nev. at 11, 62 P.3d at 727. "Cases involving fair dealing frequently contain claims that directors, officers, or majority shareholders had conflicts of interest or were improperly compensated or influenced in return for their approval of the merger . . . . *These cases also frequently involve the timing of the merger, merger negotiations, how the merger was structured, and the approval process.*" *Id.* at 12, 62 P.3d at 727-28 (emphasis added) (footnote omitted) (citing *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711-12 (Del. 1983)). "Lack of fair price may involve similar allegations plus claims that the price per share was deliberately undervalued, but it can also include negligent conduct." *Id.* at 12, 62 P.3d at 728 (citing *Weinberger*, 457 A.2d at 711).[2]

---

[2]Respondents do not address Guzman's appraisal rights under NRS Chapter 92A, if any, beyond passing reference in a footnote in their answering brief.

Applying this law to the facts alleged in Guzman's complaint, the district court erred, I submit, in dismissing Guzman's claims for damages against AMC and Johnson. The complaint alleges that, before presenting the cash-out merger proposal to the board, AMC and Johnson negotiated his post-merger equity position with the newly private corporation on terms not available to anyone else. The complaint also alleges that, while AMC asked in its proposal that the board appoint a special committee, AMC did *not* include a request that the transaction be structured to include a provision for approval by a majority of the minority—a key fairness feature in transactions such as these. *See M&F Worldwide Corp.*, 88 A.3d at 644. Then, even though the law firm advising the special committee recommended that it adopt a majority-of-the-minority provision in structuring the approval process, the committee without explanation rejected this advice. Also rejected, at the insistence of one of AMC's board representatives, was the recommendation that a market check be performed on RLJE. Granted, AMC's earlier loan to RLJE included a no-shop provision, but this does not change the fact that the process whereby the merger was negotiated and approved omitted, at AMC's insistence, another key fairness feature. This omission is of special concern given that, after AMC delivered its proposal, the special committee undertook to revise RLJE's five-year base case financial forecasts *downward* despite management's public statements two weeks earlier consistent with the preexisting forecasts. And, although the majority suggests only two pages of the 60-page complaint address AMC and Johnson, this is inaccurate—the complaint states two counts, one against the individual directors, and the second against the controlling

shareholders and allegations concerning the latter and their agents take up more than half of the complaint's 60 pages.

Based on the allegations noted above, and others, I would reverse the district court's order of dismissal against AMC and Johnson and allow Guzman to proceed to discovery. While I agree that a transaction such as this could be structured so as to receive business-judgment rather than entire- or inherent-fairness review, *see M&F Worldwide Corp.*, 88 A.3d at 644, the merger proposal in this case included none of the features justifying such deference besides creating a special committee, whose decisions respecting the safeguards the transaction needed to include were allegedly influenced—adversely to the minority shareholders—by AMC. Reviewed on an entire- or inherent-fairness standard, Guzman's complaint is sufficient to state claims against AMC and Johnson upon which relief could be granted. For these reasons, while I concur with my colleagues in affirming the dismissal, based on NRS 78.138(7), of the RLJE directors other than Johnson, I otherwise respectfully dissent.

_____Pickering_____, J.
Pickering