# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN RE: NEWPORT CORPORATION
SHAREHOLDER LITIGATION.

No. 80636

FILED

MAR 3 0 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

HUBERT C. PINCON;
INTERNATIONAL UNION OF
OPERATING ENGINEERS-
EMPLOYERS CONSTRUCTION
INDUSTRY RETIREMENT TRUST,
LOCAL 302; AND INTERNATIONAL
UNION OF OPERATING ENGINEERS-
EMPLOYERS CONSTRUCTION
INDUSTRY RETIREMENT TRUST,
LOCAL 612,
Appellants,
vs.
ROBERT J. PHILLIPPY; KENNETH F.
POTASHNER; CHRISTOPHER COX;
SIDDHARTHA C. KADIA; OLEG
KHAYKIN; AND PETER J. SIMONE,
Respondents.

## ORDER OF AFFIRMANCE

This is an appeal from district court orders granting respondents summary judgment, denying appellants' motion to amend, and striking appellants' jury demand in a breach-of-fiduciary-duty action. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

### I.

Newport Corporation—a once publicly traded Nevada corporation—was a global provider of technology products and systems. Appellants are a class of former shareholders of Newport common stock (collectively, shareholders). Respondents are the individual members of Newport's former board of directors (collectively, the Board).

22- 09886

Amidst a market downturn and several years of lackluster financial results, the Board turned to strategic alternatives for Newport, specifically, a merger-of-equals or acquisition transaction. The Board engaged financial and legal counsel, and merger discussions ensued over nine months with nine potential parties. To guide the discussions, Newport's management created two sets of five-year financial forecasts— the "base case" and the "acquisition case." The base case assumed an organic 3 percent compound annual growth rate, while the acquisition case assumed a more aggressive 10 percent compound annual growth rate based on a mix of organic and acquisition-based growth. The Board also directed its financial counsel (J.P. Morgan) to conduct a market check to evaluate Newport's current market value.

During this process, MKS Instruments, Inc. contacted Newport about a potential transaction and eventually offered to acquire Newport for $23 per share in cash. Meanwhile, Newport continued to explore transactions with other interested parties. At Newport management's direction, J.P. Morgan used the base case to value Newport, and based on this evaluation, J.P. Morgan delivered an opinion that MKS's offer was fair to Newport's shareholders. The Board then entered a brief period of exclusivity with MKS before unanimously approving the merger agreement, under which MKS agreed to purchase all of Newport's common stock at $23 per share in cash.[1] The deal represented a 53 percent premium over Newport's closing share price of $15.04.

---

[1]MKS formed PSI Equipment, Inc.—a Nevada corporation and a wholly owned subsidiary of MKS—solely for the purpose of completing the merger with Newport. Upon completion of the merger, Newport absorbed PSI and became a wholly owned subsidiary of MKS.

A group of plaintiffs different from those in this case filed, then abandoned, a class action seeking to enjoin the merger. Ninety-nine percent of shareholders approved the merger transaction. The shareholders then initiated the class action suit underlying this appeal, alleging that the board members breached their fiduciary duties, causing the merger share price to be undervalued. Several years later, shareholders moved to amend their second-amended complaint, which the district court denied. While the shareholders' motion to amend was pending, the Board moved for summary judgment on all claims, and the district court granted their motion. Shareholders appeal the district court's summary judgment decision and its order denying their motion to amend.[2]

## II.

In granting the Board's motion for summary judgment, the district court concluded that shareholders could not rebut the business judgment rule as applied to the MKS acquisition because the Board exercised due care during the nine-month sale process and shareholders otherwise failed to show that self-interest or fraud motivated a voting majority of the Board when it approved the transaction. Our review is de novo, *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005), and we affirm for two reasons.

## A.

First, summary judgment was proper because shareholders failed to produce sufficient evidence to rebut the business judgment rule. Under NRS 78.138(7)(a) & (b), to proceed with their breach-of-fiduciary-

---

[2]Shareholders also challenge the district court's order striking their jury demand; we do not consider this alleged error because we conclude that summary judgment was proper.

duty claim shareholders must (1) rebut the business judgment rule, *and* (2) show both that the directors breached their fiduciary duties and that those breaches "involved intentional misconduct, fraud or a knowing violation of law." *Chur v. Eighth Judicial Dist. Court*, 136 Nev. 68, 71-72, 458 P.3d 336, 340 (2020); *see also Guzman v. Johnson*, 137 Nev., Adv. Op. 13, 483 P.3d 531, 537 (2021) (overruling the inherent fairness standard applied in *Foster v. Arata*, 74 Nev. 143, 156, 325 P.2d 759, 765 (1958), and the gross negligence standard applied in *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 640, 137 P.3d 1171, 1184 (2006)). Nevada's business judgment rule presumes that corporate directors and officers complied with their fiduciary duties when making a business decision, including their duty "to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests," (i.e., the duty of loyalty). *Shoen*, 122 Nev. at 632, 137 P.3d at 1178; *see also* NRS 78.138 (stating Nevada's business judgment rule).

To rebut the business judgment rule via an allegation of a breach of the duty of loyalty, shareholders must show that self-interest impacted a voting majority of the Board. *See Wynn Resorts, Ltd. v. Eighth Judicial Dist. Court*, 133 Nev. 369, 376, 399 P.3d 334, 342-43 (2017) (applying the business judgment rule to the board as a whole); *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1168 (Del. 1995). When self-interest is only alleged as to a single director, plaintiffs must show that the director had a material interest in the transaction and that the director failed "to disclose his [or her] interest in the transaction to the [B]oard and a reasonable board member would have regarded the existence of the material interest as a significant fact in the evaluation of the proposed transaction." *Cinerama*, 663 A.2d at 1168 (emphases and internal quotation marks omitted); *see also La. Mun. Police Emps.' Ret. Sys. v. Wynn*,

829 F.3d 1048, 1059-60 (9th Cir. 2016) (applying Nevada law and concluding that plaintiffs failed to show that a material conflict of interest impacted a majority of the board). Shareholders attempt to make such a showing here by arguing that board member Robert Phillippy (Newport's CEO) had several conflicts of interest—(1) he feared being terminated, (2) his change-in-control severance package was more lucrative than in other scenarios, and (3) he secured post-merger employment with MKS—that motivated him to commit fraud on the remainder of the Board to achieve approval of the MKS acquisition.

Shareholders fail to adduce evidence to support their claim that Phillippy's above-cited interests amount to actionable conflicts. *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002) (holding that a conflict of interest exists when a director has a material financial or other interest in a transaction different from other shareholders' interests). Unrebutted record evidence shows that Phillippy did not seek a transaction with MKS out of fear of being fired: The Board testified that it never considered terminating Phillippy or asking him to resign as CEO, and Phillippy testified that he never feared losing his job; while there were activist shareholders who criticized Phillippy, they lacked the votes to oust him from the Board. Similarly, unrebutted record evidence shows that Phillippy did not force a transaction with MKS to achieve a more lucrative severance package because a transaction with any party, not just MKS, would have triggered Phillippy's change-in-control severance package. And the Board (including Phillippy) consistently considered retaining Newport's independence alongside transaction options and concluded that remaining independent carried significant risk because market conditions vary and achieving $23 per share would take many years without a transaction. Moreover, even if Phillippy's interests were conflicted, shareholders offer no

evidence of his financial circumstances to show that the interests were material to him and therefore impacted his impartial judgment. *See Wynn*, 829 F.3d at 1059-60 (interpreting Nevada law and applying a subjective actual-person standard to grant summary judgment because plaintiffs did not show that directors were individually impacted by alleged interests); *Orman*, 794 A.2d at 24 (applying a subjective "actual person" test to determine whether an interest is financially material to a director).

Furthermore, Phillippy's alleged self-interest does not alone rebut the business judgment rule, *Guzman*, 137 Nev., Adv. Op. 13, 483 P.3d at 537 (holding that merely alleging that a director had an interest in the transaction is not enough to rebut the business judgment rule and shift the burden to the defendant under NRS 78.138); shareholders also bore the burden of showing that genuine issues of material fact existed regarding Phillippy's concealment of these interests from the Board, thus impacting the Board's overall independence. *Telxon Corp. v. Meyerson*, 802 A.2d 257, 264 (Del. 2002); *see also Orman*, 794 A.2d at 25 n.50 (reasoning that a director's self-interest alone is not enough to challenge a director's independence, and a plaintiff must show that such interest compromised the director's independence and valid business judgment when voting on the challenged transaction). Shareholders do not meet this burden either because the record shows that the Board knew of pressure from activist shareholders regarding Phillippy's performance and of the tension between Phillippy and Newport's CFO, Charles Cargile, regarding the CEO position and still testified that it did not consider terminating Phillippy. The record also shows that the Board knew of Phillippy's change-in-control severance package because it approved it years earlier and included this information in its shareholder proxy statement. Finally, Phillippy's post-close employment negotiations with MKS are immaterial to the propriety of the

SUPREME COURT
OF
NEVADA

(O) 1947A

6

transaction's approval because those discussions occurred *after* the Board voted to approve the merger. *English v. Narang*, C.A. No. 2018-0221-AGB, 2019 WL 1300855, at \*12 (Del. Ch. Mar. 20, 2019) (reasoning that post-close employment discussions are not material unless they occur before the merger agreement is signed).

B.

Second, summary judgment was proper because, even if shareholders raised a material issue of fact as to whether Phillippy was compromised, and assuming that Phillippy's self-interest called the other board members' judgment into question sufficient to set aside the business judgment rule, shareholders still do not show an actionable injury—i.e., that the board members breached their fiduciary duties and that those breaches involved intentional misconduct, a knowing violation of law, or fraud. NRS 78.138(7); *Chur*, 136 Nev. at 71-72, 458 P.3d at 340. Shareholders do not argue how the independent board members committed intentional misconduct amounting to a breach of fiduciary duty, a knowing violation of law, or fraud, and these arguments are accordingly waived. *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (holding that an argument is waived on appeal if not cogently argued or properly supported with legal authority).

Rather, shareholders argue that Phillippy breached his fiduciary duty of loyalty by intentionally concealing Newport's Strategic Plan (the Plan)—and the Plan's disclosure to J.P. Morgan and MKS—from the Board based on his self-interest. But record evidence does not support these allegations: To demonstrate a breach of the duty of loyalty, a plaintiff may show that a director acted in bad faith or self-interest to cause the plaintiff damages. *See Guzman*, 137 Nev., Adv. Op. 13, 483 P.3d at 538; *In*

*re Gaylord Container Corp. S'holders Litig.*, 753 A.2d 462, 476 (Del. Ch. 2000). Here, Newport management began its internal financial planning processes in November 2015, including creation of the Plan, independent and apart from merger negotiations. The Plan included a detailed compilation of Newport's business units' operational initiatives, strategies, and top-down financial forecasts for the next three years. Newport management gave the Plan to J.P. Morgan for reference and to MKS with the major caveat that the Plan was an incomplete work in process. Newport's management did not finish the Plan ahead of the merger's close in February 2016 and therefore did not present it to the Board as planned for March 2016.

The organic timing of Newport's internal strategic forecasting process, overlaid with the timing of merger negotiations, does not amount to concealment. And no record evidence shows that Phillippy directed J.P. Morgan to conceal from the Board that Newport provided MKS with the Plan. Indeed, shareholders conceded at oral argument before this court that the Board could have accessed the diligence data room—where Newport indicated that it provided the Plan to MKS—thus answering any question about whether Phillippy concealed the Plan, or its disclosure to MKS, from the Board. To the extent that Phillippy did not reveal the Plan and its contents to shareholders in the proxy statement, this omission was not improper because the Plan was incomplete and historically unreliable. *See Chen v. Howard-Anderson*, 87 A.3d 648, 688 (Del. Ch. 2014) ("[I]t is not our law that every extant estimate of a company's future results, however stale or however prepared, is material. Rather, because of their essentially predictive nature, our law has refused to deem projections material unless the circumstances of their preparation support the conclusion that they are reliable enough to assist the stockholders in making an informed

judgment.") (internal quotation marks omitted). Again, shareholders conceded at oral argument that Newport did not provide the Plan to shareholders in past years, presumably for these reasons. Further, the Plan was immaterial to shareholders (and the Board) in evaluating the merger because the base and acquisition cases encompassed the Plan's forecasted growth figures, and the proxy included both the base and acquisition cases. *Cf. TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) ("An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.").

With regard to shareholders' allegation that Phillippy purposefully undervalued Newport by submitting the base case forecast to the Board and J.P. Morgan, record evidence shows the opposite; even if Phillippy believed the base case to be undervalued, and failed to share his opinion with the Board (and shareholders), his opinion is irrelevant because the Board evaluated potential transactions against both the base case and the higher-valued acquisition case. The proxy statement also included both the base and acquisition cases for the shareholders' review. Finally, shareholders fail to provide any evidence supporting their allegation that Phillippy intentionally concealed that MKS would have paid more to acquire Newport from the Board; again, record evidence shows the opposite. Shareholders further failed to produce record evidence showing that the above actions amounted to more than timing, much less that Phillippy intentionally, knowingly, or fraudulently induced the Board to rely on incomplete information, as is required to be actionable under NRS 78138(7). *Chur*, 136 Nev. at 71-72, 458 P.3d at 340.

The cases shareholders provide do not substantiate their claims because they apply Delaware's less-forgiving inherent-fairness standard to

SUPREME COURT
OF
NEVADA

(O) 1947A

assess the directors' actions, which Nevada does not.[3] *Compare Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1989) (applying Delaware's inherent-fairness standard to evaluate the propriety of a transaction), *and Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (same), *with Guzman*, 137 Nev., Adv. Op. 13, 483 P.3d at 537 (declining to apply the inherent-fairness standard). And, as discussed, shareholders fail to provide facts suggesting "that the merger was accomplished through the wrongful conduct of . . . directors . . . or officers of the corporation." *See Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 11, 62 P.3d 720, 727 (2003).

Shareholders therefore failed to rebut the business judgment rule as a matter of law and the board members retain the presumption that they acted in good faith when they approved the instant merger transaction. Summary judgment was proper. *Wynn*, 133 Nev. at 375, 399 P.3d at 341-42. In any case, shareholders fail to raise a material issue of fact regarding the board members' intentional breach of their fiduciary duties; summary judgment was alternatively proper on these grounds.

III.

---

[3]These cases are also factually distinct: Phillippy only sat on Newport's board, he had no pre-signing promise of employment with MKS, he did not "tip" other parties' offers to MKS, and he did not use Newport's internal information to enhance MKS's position because the Plan did not contain an analysis of Newport's value that the base and acquisition cases—which were disclosed to the Board and competing parties—did not already cover. *Cf. Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1275-77 (Del. 1989) (holding that officers breached their fiduciary duties by enabling their preferred buyer to win a shares auction by tipping it with the highest bid); *Weinberger v. UOP, Inc.*, 457 A.2d 701, 705, 709 (Del. 1983) (holding that directors that sat on both the buyer's and seller's boards of directors violated their fiduciary duties of loyalty by creating a value analysis for the buyer with the seller's internal information without disclosing the same analysis to the buyer).

We further conclude that the district court did not abuse its discretion by denying shareholders' effort to avoid summary judgment by moving for leave to amend their second-amended complaint. *See Holcomb Condo. Homeowners' Ass'n v. Steward Venture, LLC*, 129 Nev. 181, 191, 300 P.3d 124, 130-31 (2013) (reviewing an appeal from an order denying a motion for leave to amend under an abuse of discretion standard). In their motion to amend, shareholders sought to add (1) a claim for rescissory damages, (2) Cargile as a defendant, and (3) several new breach-of-fiduciary-duty theories. Shareholders filed the motion before the deadline specified in the scheduling order for such motions, but after discovery closed and just weeks before the deadline for summary judgment motions.

Leave to amend should be freely granted when justice so requires, but the district court retains wide discretion to deny such a motion if it finds undue delay, dilatory motive, or prejudice to the opposing party. NRCP 15(a)(2); *Kantor v. Kantor*, 116 Nev. 886, 891, 8 P.3d 825, 828 (2000). A motion for leave to amend can be timely under an NRCP 16.1 scheduling order, yet fail to meet the criteria specified in NRCP 15(a)(2). *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Further, a motion to amend cannot be used as a "last-ditch effort to avoid summary judgment that otherwise might have been imminently granted." *Cf. Nutton v. Sunset Station, Inc.*, 131 Nev. 279, 293. 357 P.3d 966, 976 (Ct. App. 2015).

The district court did not abuse its discretion when it held that shareholders unduly delayed seeking leave to amend to add a claim for rescissory damages. *Cf. MEI-GSR Holdings, LLC v. Peppermill Casinos, Inc.*, 134 Nev. 235, 239, 416 P.3d 249, 254-55 (2018) (holding that undue delay alone constitutes sufficient grounds to deny a motion to amend). Before the merger closed, different plaintiffs filed a putative class action

 

lawsuit seeking to enjoin the merger. Those plaintiffs abandoned their claim in favor of a post-merger lawsuit. But the pre-merger plaintiffs included a claim for rescissory damages in their original 2016 complaint, so shareholders knew (or should have known) of this potential claim when they replaced that complaint with their own. *See AmerisourceBergen*, 465 F.3d at 953 ("[I]n evaluating undue delay, we also inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'") (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)). Shareholders' claim that they required an expert report to support these damages does not excuse their delayed disclosure, via amendment, of a whole new category of damages. *See* NRCP 16.1(a)(1)(C) (2012) (stating that "a party must, without awaiting a discovery request, provide to other parties: . . . [a] computation of any category of damages claimed by the disclosing party")[4]; *Pizarro-Ortega v. Cervantes-Lopez*, 133 Nev. 261, 265, 396 P.3d 783, 787 (2017) (holding that NRCP 16.1(a)(2)(B) disclosures and any "perceived difficulty in providing a precise [damages] dollar figure" do not excuse a party from its Rule 16.1(a)(1) initial disclosure obligations).

Likewise, shareholders unduly delayed their attempt to add Cargile as a defendant. Although shareholders argue that they did not learn of Cargile's potential liability until the Board produced certain text messages in February and March 2019, these text messages only added color to existing substance. Shareholders knew or should have known of their potential claims against Cargile years ahead of the requested

---

[4]The parties made initial disclosures before the 2019 amendments to the Nevada Rules of Civil Procedure, so the former rules control. *See* NRS 2.120 (establishing that court rules must apply prospectively).

amendment given that they already knew that Cargile was Newport's CFO and assisted in creating the base and acquisition cases, that Newport management directed J.P. Morgan to use the base case in rendering its fairness opinion, that internal tension was mounting between Cargile and Phillippy, and that Cargile intended to seek additional compensation in connection with a potential acquisition of Newport.

Undue delay also marred many of shareholders' newly proposed theories of liability. From the record, it appears shareholders knew of the facts underlying these theories years before the attempted 2019 amendment—for example, shareholders knew that Phillippy disclosed a reorganizational plan for Newport to the Board and to MKS as early as 2016. And, collectively, the late-stage amendments would have prejudiced the Board by forcing them to reopen discovery and defend against longstanding claims after fact discovery closed and on the eve of the summary-judgment deadline. *See State, Univ. & Cmty. Coll. Sys. v. Sutton,* 120 Nev. 972, 988, 103 P.3d 8, 19 (2004) (holding that the court did not abuse its discretion by denying amendment after the close of discovery, on a nontrivial matter, and when the movant knew of the facts underlying amendment nine months earlier); *Ennes v. Mori,* 80 Nev. 237, 242-43, 391 P.2d 737, 740 (1964) (holding that NRCP 15(a)'s liberal amendment standard is not without restraint); 61A Am. Jur. 2d *Pleading* § 664 (2021) ("[P]rejudice means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position."). Amendment would be especially prejudicial to Cargile because shareholders told him at his deposition that he was not a party to this case. *See Servatius v. United Resorts Hotels, Inc.,* 85 Nev. 371, 373, 455 P.2d 621, 622-23 (1969) (considering whether a defendant was "misled to its prejudice" when

SUPREME COURT
OF
NEVADA

(O) 1947A

determining whether amendment is proper), *holding modified on other grounds by Bender v. Clark Equipment Co.*, 111 Nev. 844, 846, 897 P.2d 208, 209 (1995). The district court therefore did not abuse its discretion by denying shareholders' motion to amend for undue delay and prejudice to the Board and Cargile.

IV.

In sum, shareholders fail to rebut the business judgment rule as a matter of law, and the presumption that the Board acted in good faith when it approved the MKS acquisition remains in place. *Wynn*, 133 Nev. at 375, 399 P.3d at 341-42. Shareholders further fail to raise a material issue of fact as to the board members' breach of their fiduciary duties. Summary judgment was therefore proper. Further, the district court did not abuse its discretion by denying shareholders' motion to amend their second-amended complaint. Accordingly, we

ORDER the judgments of the district court AFFIRMED.

_____, J.
Cadish

_____, J.    _____, J.
Pickering                               Herndon

cc: Hon. Nancy L. Allf, District Judge
Stephen E. Haberfeld, Settlement Judge
Robbins Geller Rudman & Dowd, LLP
Hone Law
Brownstein Hyatt Farber Schreck, LLP/Las Vegas
Gibson, Dunn & Crutcher LLP/Washington DC
Gibson, Dunn & Crutcher, LLP/San Francisco
Gibson, Dunn & Crutcher LLP/Irvine
Eighth District Court Clerk